UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LORRAINE YOUNG LAWRENCE** | **CIVIL ACTION NO.** |
| **VERSUS** | **22-381-EWD (CONSENT)** |
| **COMMISSIONER OF SOCIAL SECURITY** | |

### RULING AND ORDER

Lorraine Young Lawrence ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits ("DIB").[1] Plaintiff filed a counseled Memorandum in Support of her appeal.[2] The Commissioner filed an Opposition Memorandum,[3] to which Plaintiff filed her Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, Plaintiff's claims of reversible error are without merit. The record, considered as a whole, supports the finding that the ALJ applied the proper legal standards, and that substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, the Court affirms[5] the Commissioner's decision and dismisses Plaintiff's appeal.

### I. PROCEDURAL HISTORY

On June 19, 2020, Plaintiff filed an application for DIB alleging disability due to "keratoconus in both eyes; lower back pain; swelling in both legs; carpal tunnel in right hand; right

---

[1] *See* R. Doc. 10-6, pp. 2-3 (application for DIB) and R. Doc. 10-3, pp. 2-8 (Notice of Appeals Council Action). References to documents filed in this case, including the administrative record on appeal, are designated by "(R. Doc. [docket entry number(s)], p. [page number(s)]."
[2] R. Doc. 13.
[3] R. Doc. 15.
[4] R. Doc. 17.
[5] The parties consented to proceed before the undersigned (R. Doc. 11) and on October 26, 2022, an Order of Reference was entered by the district judge referring this matter to conduct "all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." R. Doc. 12.

1

foot pain, unable to stand too long; blindness in both eyes; neuropathy in both legs; both feet and knees swell; heart disease; and high blood pressure."[6] Plaintiff initially alleged her disabilities began on August 6, 2019 but later amended her onset date to March 15, 2020.[7] Plaintiff's claim was initially denied on October 22, 2020 and again on reconsideration on March 2, 2021.[8] Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").[9] A hearing was held by telephone on September 23, 2021 before the ALJ.[10] Plaintiff, represented by counsel, testified at the hearing.[11] Vocational Expert ("VE") Amy Salva also testified.[12]

On October 20, 2021, the ALJ issued a Notice of Unfavorable Decision.[13] Plaintiff's request for review by the Appeals Council[14] was denied on April 6, 2022.[15] On June 10, 2022, Plaintiff filed her Complaint in this Court seeking review of the Commissioner's decision.[16] Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action for judicial review, and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[17]

---

[6] R. Doc. 10-6, pp. 2-3; R. Doc. 10-4, pp. 109-110 (cleaned up).
[7] R. Doc. 10-6, p. 2; R. Doc. 10-4, p. 110. *See* R. Doc. 10-3, pp. 62-63 (amending Plaintiff's onset date to March 15, 2020 during the hearing before the administrative law judge).
[8] R. Doc. 10-5, pp. 5-8 (notice of disapproved claim); R. Doc. 10-5, pp. 10-11 (requesting reconsideration); R. Doc. 10-5, pp. 12-17 (denial on reconsideration).
[9] R. Doc. 10-5, pp. 18-19.
[10] R. Doc. 10-3, pp. 58, 60.
[11] R. Doc. 10-3, pp. 65-87.
[12] R. Doc. 10-3, pp. 87-91.
[13] R. Doc. 10-3, pp. 34-50.
[14] R. Doc. 10-3, pp. 24-28.
[15] R. Doc. 10-3, pp. 2-5.
[16] R. Doc. 1.
[17] *See* 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

## II.   PLAINTIFF'S ALLEGATIONS OF ERROR

In her lone assignment of error, Plaintiff argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ "committed legal error in failing to properly evaluate the opinion of Gregory Ward, M.D., pursuant to the prevailing law and regulations."[18]

## III.   LAW AND ANALYSIS

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[19] If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[20] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[21] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[22] Conflicts in the evidence are for the Commissioner to decide, and that decision must be affirmed if substantial evidence supports it, even if there is evidence on the other side.[23] In applying the substantial evidence standard, the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[24]  If the Commissioner fails to apply

---

[18] R. Doc. 13, p. 1, 8-15.
[19] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).
[20] *Richardson v. Perales*, 402 U.S. 389-90, 401 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), superseded by statute on other grounds, *see Stancle v. Colvin,* No. 15-40, 2016 WL 3172784, at *8, n. 11 (E.D. Tex. June 7, 2016).
[21] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).
[22] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001), quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).
[23] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[24] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000), citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[25]

What Plaintiff really seeks is to have this Court reweigh the evidence in this case and come to a different conclusion than the Commissioner. The Court is not permitted to do so. While there is evidence in the record that could have permitted the ALJ to reach a different conclusion regarding whether Plaintiff's physical impairments render her disabled, the ALJ applied the correct legal standards and substantial evidence supports his findings.

### A. Substantial Evidence Supports the ALJ's Decision to Use a Narrow Relevant Time Period of March 15, 2020 (the Amended Onset Date) through September 30, 2020 (the Date Last Insured)

The ALJ determined that the relevant time period for Plaintiff's current application for DIB is very narrow (*i.e.*, about six months) for several reasons.[26] First, before she filed the instant application, Plaintiff filed four applications for disability, DIB, and/or supplemental security income ("SSI") benefits alleging disability beginning at least as early as June 30, 2006.[27] Those applications involved alleged disability because of some combination of the following conditions: "hand, knee, and back problems, pain, and swelling";  right and/or bilateral carpal tunnel

---

[25] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) and *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).
[26] R. Doc. 10-3, p. 40.
[27] *See* R. Doc. 10-4, pp. 2-12 (May 5, 2009 ALJ Hearing Decision denying Plaintiff's claim for benefits for disability allegedly beginning June 30, 2006 because jobs existed in the national economy that a person of Plaintiff's age, educational level, previous work history, and RFC could perform); *id.* at pp. 13-30 (August 27, 2010 ALJ Hearing Decision denying Plaintiff's claim for benefits for disability allegedly beginning May 5, 2009 because the ALJ found that Plaintiff was "not disabled" and that jobs existed in the national economy that a person of Plaintiff's age, educational level, previous work history, and RFC could perform; and September 28, 2011 Notice of Appeals Council Action denying review of the ALJ's decision); *id.* at pp. 31-56 (July 5, 2013 ALJ Hearing Decision denying Plaintiff's claim for benefits for disability with August 28, 2010 as the earliest onset date appropriately considered because Plaintiff had substantial gainful employment during the relevant period and Plaintiff had the RFC to perform the full range of sedentary work and was capable of performing past relevant work as a "mobile home park manager/officer"); and *id.* at pp. 57-108 ((a) November 1, 2017 ALJ Hearing Decision denying Plaintiff's claim for benefits for disability allegedly beginning  August 20, 2015 because Plaintiff had the RFC to perform the full range of sedentary work and was capable of performing past relevant work as a teacher's aide or receptionist; (b) May 25, 2018 Order of Appeals Council remanding the case to the ALJ to consider the medical opinion of Gregory Ward, M.D.; (c) August 5, 2019 ALJ Hearing decisions denying Plaintiff's claim for benefits because Plaintiff had the RFC to perform the full range of sedentary work and was capable of performing past relevant work as a receptionist; and (d) and June 9, 2020 Notice of Appeals Council Action denying review of the ALJ's decision).

syndrome; "degenerative disc disease of the lumbar spine"; degenerative "arthritic changes" and/or "joint disease" of the right knee; "impairment of the right ankle and foot"; obesity; keratoconus astigmatism; affective disorder; and depression and anxiety.[28] Because the denial of Plaintiff's most recent prior application became final on August 5, 2019, *res judicata* bars the ALJ from evaluating Plaintiff's impairments beginning before that date, as the ALJ expressly stated that he was not reopening the prior decisions and only considered those records as part of "establishing a longitudinal review of [Plaintiff's] impairments."[29] Plaintiff has not appealed the ALJ's determination with regard to the *res judicata* effects of the denial of her prior applications.

Second, although Plaintiff initially indicated that her disability began on August 6, 2019,[30] Plaintiff's counsel conceded during the hearing that "pursuant to 2D,[31] it looks like Plaintiff went back to work for basically a full year, which ended on March 15th, 2020, obviously, due to Covid, but Plaintiff never returned to work after that date."[32] Accordingly, Plaintiff amended her onset date to March 15, 2020.[33]

Finally, the ALJ determined that Plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2020."[34] Again, Plaintiff has not appealed the ALJ's determination that her date last insured was September 30, 2020.

---

[28] *See, e.g.*, R. Doc. 10-4, pp. 6-7, 18-19, 40-41, 63-64, 83-84 (cleaned up).
[29] R. Doc. 10-3, pp. 37-38. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied that request on June 9, 2020. R. Doc. 10-4, pp. 102-108. Because the Appeals Council denied Plaintiff's request for review, the ALJ's August 5, 2019 became the Commissioner's final decision. R. Doc. 10-3, p. 35 ("If the Appeals Council denies your appeal, my decision will become the final decision."). *See also Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision." (citations omitted)); *Richard v. Saul*, No. 20-804, 2021 WL 9684139, *3 (M.D. La. Oct. 13, 2021) ("The Appeals Council may either review the decision or deny the request for review. If the Appeals Council grants review of a claim, then the decision that the Appeals Council issues is the final decision. However, if the "Appeals Council denies the request for review, the ALJ's opinion becomes the final decision." (citations omitted)).
[30] R. Doc. 10-7, p. 2.
[31] *See* R. Doc. 10-6, pp. 4-6.
[32] R. Doc. 10-3, pp. 62-63.
[33] R. Doc. 10-3, pp. 37, 62-63.
[34] R. Doc. 10-3, p. 40.

For these reasons, the time period relevant to Plaintiff's application for DIB is about 6.5 months (from Mach 15, 2020 – September 30, 2020). Thus, to be entitled to DIB, Plaintiff has the burden of establishing that she suffered from a disability between March 15, 2020 and September 30, 2020.

**B. Substantial Evidence Supports the ALJ's Determination that Plaintiff was Not Disabled During the Relevant Period Because Her Residual Functional Capacity Did Not Preclude Her from Performing Her Past Relevant Work as a Receptionist**

**1. The ALJ's Crafting of Plaintiff's Residual Functional Capacity and the Determination that Plaintiff was Not Disabled**

The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[35] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[36] The burden rests on the claimant throughout the first four steps of this five-step process to prove disability.[37]

Regarding step 4, the responsibility to determine a plaintiff's RFC belongs to the ALJ.[38] In making an RFC determination, the ALJ must consider all the record evidence and determine a plaintiff's abilities despite her physical and mental limitations.[39] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related

---

[35] 20 C.F.R. §§ 404.1520; 416.920.
[36] *Masterson*, 309 F.3d at 271.
[37] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[38] *Calvert v. Colvin*, No. 14-404, 2016 WL 3906821, at *3 (W.D. Tex. July 14, 2016), citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[39] *Calvert*, 2016 WL 3906821, at *3, citing *Martinez*, 64 F.3d at 176.

6

symptoms.[40] The relative weight to be given the evidence is within the ALJ's discretion.[41] Similarly, the ALJ's RFC determination can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected.[42] The ALJ is not required to incorporate limitations in the RFC that he does not find to be supported in the record.[43] A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[44] The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision.[45] Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision.[46]

Here, after making the required determinations at steps 1, 2, and 3,[47] the ALJ formulated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20

---

[40] *Calvert*, 2016 WL 3906821, at *3, citing 20 C.F.R. §§ 404.1529, 404.1545 and SSR 96-8p.
[41] *Calvert*, 2016 WL 3906821, at *3, citing *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).
[42] *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).
[43] *Calvert*, 2016 WL 3906821, at *3, citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).
[44] *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).
[45] *Leggett*, 67 F.3d at 564.
[46] *Johnson*, 864 F.2d at 343-44.
[47] Because Plaintiff has not appealed the ALJ's determinations at step 1, 2, or 3, the Court will only briefly summarize those determinations here. At step 1, the ALJ determined that Plaintiff met the insured status requirements through September 30, 2020 and that Plaintiff had not engaged in substantial gainful activity from the March 15, 2020, the alleged amended onset date, through the September 30, 2020, the date last insured. R. Doc. 10-3, p. 40. At step 2, the ALJ determined that through the date last insured, Plaintiff had the following severe impairments: obesity, impairment of the right ankle and foot status post resection and debridement, coronary ischemia, and bilateral carpal tunnel syndrome. *Id*. at pp. 40-42. The ALJ also considered several other medical conditions claimed by Plaintiff but found that they were non-severe. Those conditions included depression and anxiety, degenerative disc disease, degenerative joint disease of the right knee, "blindness and a long history of bilateral keratoconus," GERD, hyperlipidemia, hiatal hernia, and iron deficiency anemia. *Id*. The ALJ determined that there were no formal diagnoses regarding Plaintiff's reports of swelling in her legs, neuropathy, and shoulder pain, so he found those conditions "non-medically determined impairments." *Id*. at p. 42. At step 3, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment(s) listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at pp. 42-43.

>    pounds occasionally and 10 pounds frequently. She can walk or stand for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl. The claimant can frequently handle and finger bilaterally as well as frequently push, pull and operate foot controls with right lower extremity.[48]

In making that decision, the ALJ stated that he "consider[ed] the entire record" and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."[49] Likewise, the ALJ explained that he "also considered the medical opinion(s) and prior administrative medical finding[s] in accordance with the requirements of 20 CFR 404.1520c."[50] The ALJ then methodically discussed evidence in the record, including medical evidence, the opinions of Dr. Ward and Dr. Hall, the opinion of a State agency psychological consultant, the opinions of two State agency physical consultants, and testimony at the September 23, 2021 hearing, to determine (1) whether Plaintiff has an "underlying medically determinable physical or mental impairment(s)," and, (2) if it is shown that an "underlying physical or mental impairment(s)…could reasonably be expected to produce [Plaintiff's] pain or other symptoms," whether the intensity, persistence, and limiting effects of the Plaintiff's symptoms limit her work-related activities (and, if so, to what extent).[51]

Considering the "objective evidence and the record as a whole," the ALJ determined that Plaintiff's "conditions do not preclude all work." Instead, at step 4, the ALJ found that Plaintiff can perform her past relevant work as a receptionist (classified as a sedentary SVP3 position) as generally performed because the performance of that work would not require work-related

---

[48] R. Doc. 10-3, p. 43.
[49] R. Doc. 10-3, p. 44.
[50] *Id*.
[51] R. Doc. 10-3, pp. 43-49 (discussing (1) obesity and the effects it has on Plaintiff's RFC; (2) issues with her foot, back, and knees; (3) carpal tunnel syndrome; and (4) heart problems).

activities excluded her by RFC.[52] The ALJ found that this position was past relevant work because it was performed within fifteen years of the date of his decision, for a sufficient length of time to learn and provide average performance, and at the level of substantial gainful employment.[53] Consistent with 20 C.F.R. § 404.1569a, the ALJ compared Plaintiff's RFC with the physical and mental demands of this job,[54] and determined that Plaintiff could perform it as generally performed based on the uncontroverted testimony of the VE.[55]

### 2. The ALJ Did Not Err in His Consideration and Treatment of the Medical Evidence, Including Dr. Ward's Medical Opinion

#### a. Revised Legal Standard on Treatment and Articulation of Medical Opinions and Prior Administrative Medical Findings

At issue here is the ALJ's treatment of medical opinions[56] and prior administrative findings.[57] As Plaintiff and the Commissioner agree,[58] consideration of medical opinions and prior administrative medical findings is governed by the revised rules in 20 C.F.R. § 404.1520c and 20

---

[52] *Id*. at p. 49
[53] *Id*.
[54] *Id*.
[55] *Id*.
[56] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. 20 C.F.R. § 404.1513(a)(2) *and see* 20 C.F.R. § 416.913(a)(2)(i)(A)-(D).
[57] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. 20 C.F.R. § 404.1513(a)(5).
[58] R. Doc. 13, p. 9 and R. Doc. 15, p. 5.

9

C.F.R. § 416.920c, which apply to claims, such as Plaintiff's, filed after March 27, 2017.[59] As correctly cited by the ALJ, 20 C.F.R. § 404.1520c provides that the Commissioner *will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from the claimant's medical sources*.[60] When a medical source[61] provides one or more medical opinions or prior administrative medical findings, the medical opinions or prior administrative medical findings from that medical source are to be considered together using the factors listed in (c)(1) through (c)(5) of 20 C.F.R. § 404.1520c. The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually.

The most important factors considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability[62] and consistency.[63] The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) and (c)(5) factors, *i.e.*, relationship with the claimant,[64]

---

[59] As 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c are nearly identical, the remainder of this Report will refer only to the former for the sake of brevity. *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819 (January 18, 2017), for a discussion of the revisions.

[60] *See* 20 C.F.R. § 404.1520c(a) (emphasis added) and R. Doc. 10-3, p. 44. The revised regulations did not retain the "treating source rule," which could require deference to treating source opinion evidence. *See* 20 C.F.R. § 404.1527, 20 C.F.R. § 416.927 which continue to apply to claims filed before March 27, 2017.

[61] The revised regulation no longer uses the term "treating source," but rather "medical source" to refer to the sources of medical evidence proffered by the claimant.

[62] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[63] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

[64] This includes consideration of the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

10

specialization, and "other factors."[65] Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings about the same issue that are both equally well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination.[66]

        **b.**        **The ALJ Adequately Explained His Consideration of the Medical Evidence Under 20 C.F.R. § 404.1520c**

Plaintiff argues that the ALJ committed legal error in failing to properly evaluate Dr. Ward's medical opinion[67] under the applicable regulations, and her appeal focuses entirely on the following statement by the ALJ:

> Gregory Ward MD opined [Plaintiff] was not able to work a full 8-hour day ([R. Doc. 10-9, pp. 375-377]). The opinion is not supported with functional limitations and ability to work is reserved to the commissioner. The opinion is not persuasive.[[68]]

Specifically, Plaintiff contends that the ALJ's explanation as to why Dr. Ward's medical opinion was not persuasive is "abysmal" and is akin to a "conclusion in the guise of analysis," considering it "does not include *any* evaluation of the supportability factors" in 20 C.F.R. §404.1520c and does not discuss the functional limitations contained in Dr. Ward's opinion.[69] Put differently, Plaintiff argues that remand is appropriate because the ALJ failed to "articulate how [he] considered the

---

[65] 20 C.F.R. § 404.1520c(b)(2) and  20 C.F.R. § 404.1520c(c)(5) explaining consideration of "other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."
[66] 20 C.F.R. § 404.1520c(b)(3).
[67] *See* R. Doc. 10-9, pp. 375-377 (Dr. Ward's July 15, 2021 Physical Work Limitations Questionnaire). Plaintiff testified during the hearing before the ALJ that Dr. Ward was her "pain management doctor," whom she saw "monthly for [her] knee and [her] back…" R. Doc. 10-3, p. 75.
[68] R. Doc. 10-3, p. 48.
[69] R. Doc. 13, pp. 8-15

11

medical opinions and how persuasive [he] find[s] *all* of the medical opinions" as required by applicable regulations.[70]

Conversely, the Commissioner argues that the ALJ properly applied the revised requirements for evaluating medical evidence under 20 C.F.R. § 404.1520c because in explaining supportability and consistency the ALJ is not required to "follow formalistic rules," be "[p]rocedural[ly] perfect[]," or use "magic words."[71] Rather, the Commissioner contends that the "ALJ is only required to provide enough discussion of the evidence to allow for 'meaningful judicial review.'"[72] Relatedly, the Commissioner contends that an ALJ's discussion of the persuasiveness of a medical opinion, including a discussion of the consistency and supportability factors, "is not confined to the specific discussion of the opinion itself" but rather "is considered in light of entire RFC discussion and the evidence discussed therein."[73] Against this backdrop, the Commissioner contends that the ALJ's entire RFC discussion shows that he properly evaluated the persuasiveness of Dr. Ward's medical opinion, finding it unpersuasive for several reasons—notably, (1) Dr. Ward's medical opinion was created about one year after Plaintiff's date last insured; (2) Dr. Ward's medical opinion reflects his assessment of Plaintiff's condition and abilities in July 2021, not during the relevant time period; (3) Dr. Ward's medical opinion on the "ultimate issue invaded the ALJ's province"; and (4) Dr. Ward's medical opinion does not indicate any medical support for his opinion, nor is it supported by the medical evidence in the record.[74]

The ALJ's decision reflects that he considered medical records and opinions from several sources relating to the relevant time period, to-wit:

- Plaintiff's April 29, 2020 visit to the Cardiovascular Clinic, where she was evaluated for shortness of breath and underwent a PET (positron emission

---

[70] R. Doc. 13, p. 9.
[71] R. Doc. 15, pp. 5-7 (citations omitted).
[72] *Id*. at p. 6, citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).
[73] *Id*. at p. 6 (citations omitted).
[74] *Id*. at pp. 7-14.

- tomography). Plaintiff's cardiovascular examination were "unremarkable," while her stress EKG was "abnormal with horizontal ST depression noted in Lead 2, Lead 3, AVF, V3, V4, V5 and V6," which is "consistent with Ischemia." The record reflects that the provider's impression was "abnormal cardiovascular stress test, angina equivalent, coronary artery disease, hyperlipidemia and right bundle branch block."[75]

- Plaintiff's April 29, 2020 visit to the Louisiana Institute of Physical Medicine (Dr. Ward), where she was seen for right knee pain with movement, as well as stiffness and swelling, and right foot pain. Plaintiff also noted "improved" back pain. The record reflects that Plaintiff had an antalgic gait, "slightly decreased range of motion in the shoulder and slightly decreased ankle strength," and "mild tenderness to palpitation over the navicular bone at the dorso-medial midfoot." Additionally, the record reflects that Plaintiff is having "daily" right foot pain which is exacerbated by "walking and standing" but "relieved by CAM boot." Plaintiff was advised to continue with physical therapy and Aleve, and Dr. Ward noted that Plaintiff's job at that time "require[d] repetitive walking and ambulating," and that her "job requirements *may* require a reduction in her time [and] she *may* need to reduce her hours ambulating on the foot." Plaintiff was also scheduled for an evaluation with a podiatrist regarding possible foot surgery.[76]

- Plaintiff's May 6, 2020 visit with Cardiology Associates, where Plaintiff consulted with Jeffrey Hyde, MD for a second opinion regarding the results of Plaintiff's April 29 PET scan, which was "interpreted as moderate risk abnormal in the anteroapical distribution consistent with an LAD stenosis." During the consult, Plaintiff told Dr. Hyde that *"[s]he has been riding her bike with her daughter about 3 miles every afternoon during the COVID pandemic"* and "does not report any chest pain or shortness of breath." Dr. Hyde further noted that "[i]nterestingly she does not really have any symptoms and is *exercising almost daily now*."[77]

- Plaintiff's July 15, 2020 surgery performed by Christian Hall, MD, regarding a "painful accessory navicular right foot." Dr. Hall performed a "resection of the large accessory navicular and debridement fibrotic posterior tibial tendon." Dr. Hall's operative report indicates that Plaintiff had a "chronically painful accessory navicular foot" and surgery was necessary because conservative treatment over a two-year period (involving "anti-inflammatory medication, arch support, and boot offloading") failed. His notes also reflect that Plaintiff tolerated the surgery well and was discharged that same day.[78]

- Plaintiff's September 23, 2020 visit to the Louisiana Institute of Physical Medicine (Dr. Ward), where she presented with "increasing" left and right knee pain,

---

[75] R. Doc. 10-3, p. 45, citing R. Doc. 10-8, pp. 81-84).
[76] *Id*., citing R. Doc. 10-8, pp. 164-169 (emphasis added).
[77] *Id*., citing R. Doc. 10-8, pp. 89-95 (emphasis added). The record also reflects that after a physical examination, Plaintiff had a normal range of motion, normal mood and affect, normal sinus rhythm, and a normal heart rate and regular rhythm. R. Doc. 10-8, pp. 89-95.
[78] R. Doc. 10-3, pp. 45, citing R. Doc. 10-8, pp. 211-212.

including pain with movement, stiffness, and swelling, that is "relieved by non-weight bearing." Plaintiff also noted an "aching" back pain that is "worse at night." Further, Plaintiff noted right foot pain post-surgery which is exacerbated by walking and standing" but "relieved by CAM boot." He also noted that Plaintiff's "incision site looks good overall" despite "some tenderness along the navicular aspect," and that Plaintiff is "[c]urrently in physical therapy management." Again, in the notes from his assessment of Plaintiff, Dr. Ward indicates that Plaintiff's job at that time "require[d] repetitive walking and ambulating," and that her "job requirements *may* require a reduction in her time [and] she *may* need to reduce her hours ambulating on the foot." Dr. Ward recommended that Plaintiff continue with physical therapy and take Neurontin and Mobic, ice the navicular region, and apply topical Lidoderm patch every 12 hours as needed.[79]

The ALJ's decision also reflects that he specifically considered post-surgery follow-up records from Dr. Hall although some of those records fall just outside Plaintiff's date last insured (*i.e.*, from November 12, 2020 through December 17, 2020).[80] These records indicated that Plaintiff had tenderness and edema at the surgical site, and she was diagnosed with posterior tibialis tendinosis, stress reaction or osteoporosis, mild Achilles tendinosis, and Kagers fat pad edema. Those records also indicate that two weeks post-surgery (July 29, 2020), Plaintiff was in "[l]ess pain tha[n] preoperative" and was "[p]rogressing essentially within normal limits."[81] The record from Plaintiff's September 29, 2020 visit, which was 11 weeks post-surgery, shows that Plaintiff was "healing" but experiencing "pain[] in a tennis shoe or the walking boot," and that "physical therapy may be helping a little, but not a lot."[82] Three months post-surgery, Dr. Hall noted that Plaintiff was only experiencing "[o]ccassional pain," and that she was "[a]lmost pain free in the cast."[83] Because Plaintiff was "improving," Dr. Hall indicated that she should return to therapy.

---

[79] *Id.,* citing R. Doc. 10-9, pp. 118-124. Although not mentioned by the ALJ, the medical evidence of record shows that Plaintiff visited Dr. Ward at the Louisiana Institute of Physical Medicine on August 19, 2020, and this record (including comments, evaluation, assessment, and plan) is nearly identical to Dr. Ward's September 23, 2020 record. *Compare* R. Doc. 10-8, pp. 285-290, *with* R. Doc. 10-9, pp. 118-124.
[80] R. Doc. 10-3, p. 46. *See also* R. Doc. 10-9, pp. 147-149. There are post-surgery records from Dr. Hall ranging from July 29, 2020 to October 21, 2020 that were considered but not specifically discussed by the ALJ. *See* R. Doc. 10-8, p. 218, and R. Doc. 10-9, pp. 150-152.
[81] R. Doc. 10-8, p. 218.
[82] R. Doc. 10-9, p. 151.
[83] R. Doc. 10-9, p. 150.

14

Just one month later, Dr. Hall noted that Plaintiff was "still in a lot of pain," and that her [b]oot and physical therapy have [sic] not been helpful."[84] But, two weeks later, Dr. Hall noted that Plaintiff's arch is "feeling better…after two weeks of therapy," that Plaintiff has "taken herself out of the boot and wearing a tennis shoe" despite some "soreness on the top of the foot," and that Plaintiff's posterior tibial tendon in her right foot is "improving."[85] Dr. Hall recommended that she continue with physical therapy. On December 17, 2020 (5 months post-surgery), Dr. Hall noted that Plaintiff was "[u]nable to put on a shoe," even though "[s]he fe[lt] like physical therapy is helpful."[86] He further noted that Plaintiff is "content right now to remain in the boot," which she is more comfortable with, and to continue going to therapy.[87]

Although Plaintiff is correct that the ALJ did not specifically discuss the supportability and/or consistency factors in the same paragraph where the ALJ found Dr. Ward's medical opinion unpersuasive, the ALJ's discussion of the medical evidence during (or near) the relevant time period, including records from Dr. Ward, and the ALJ's detailed RFC analysis are sufficient to create an "accurate and logical bridge between the evidence" and his finding that Dr. Ward's July 15, 2021 medical opinion is unpersuasive.[88] For example, in his July 15, 2021 medical opinion, Dr. Ward opined that based on her "diagnoses and corresponding symptoms," Plaintiff is unable

---

[84] R. Doc. 10-9, p. 149.
[85] *Id*. at p. 148 (cleaned up).
[86] *Id*. at p. 147.
[87] *Id*. (cleaned up).
[88] *See, e.g.*, *Price v. Astrue*, 401 Fed. Appx. 985, 986 (5th Cir. 2010) (holding that the "ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination" and that an ALJ does this when they "engage[] all of the relevant evidence, made credibility determinations, and explained reasons for discounting some of the evidence in the record ); *Governor v. Commissioner of Social Security*, No. 20-54, 2021 WL 1151580, *10 (M.D. La. Mar. 2, 2021) (affirming the ALJ's decision because the court was able to "adequately trace[d] the path of [the ALJ's] reasoning"); *McMillan v. Kijakazi*, No. 22-1034, 2023 WL 4535093, at * 4 (N.D. Tex. May 16, 2023) ("The law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation."); *Miller v. Commissioner of Social Security*, No. 20-194, 2022 WL 566175, at *6 (S.D. Miss. Feb. 24, 2022) (finding that, "although terse," the ALJ "appropriately articulated 'an accurate and logical bridge between the evidence' and his supportability finding, from which this Court can conclude that the ALJ's supportability finding is support by substantial evidence.").

to "obtain[] and maintain[] full-time, 40 hours/week, competitive 'substantial & gainful employment.'"[89] Put differently, Dr. Ward's opinion is that Plaintiff is "NOT capable of full-time work." Putting aside the fact that decisions about a Plaintiff's ability to work are reserved solely for the Commissioner,[90] as well as the fact that this medical opinion was well outside Plaintiff's date last insured,[91] the ALJ's determination that Dr. Ward's July 15, 2021 is not adequately supported by functional limitations is based on other medical evidence in the record, including records from Dr. Ward during the relevant time period.[92] In his earlier records, Dr. Ward noted that Plaintiff *may* need a reduction in hours at work and/or *may* need to walk/move around less

---

[89] R. Doc. 10-9, pp. 375-377. In his July 15, 2021 opinion, Dr. Ward noted (1) that Plaintiff could occasionally lift 10 lbs. and frequently lift 5 lbs.; (2) that she could rarely reach overhead; (3) that she could constantly, successful, and repetitively utilize gross manipulation (handing), fine manipulation (fingering), and work with small object with both hands; (4) that her maximum (total) ability to sit without discomfort during an 8-hour day was 2 hours, and she could only sit for 20-30 minutes at time before needing to move or stretch to relieve discomfort; (5) that her maximum (total) ability to stand without discomfort during an 8-hour day was limited to 2 hours before needing to move or stretch to relieve discomfort; and (6) that Plaintiff would need to lie down to relieve discomfort twice a day for 30 minutes (but, curiously, Plaintiff would be able to continue working while lying down but not while stretching/moving).

[90] *See, e.g.*, *Martinez*, 64 F.3d at 176 ("[T]he ALJ has sole responsibility for determining a claimant's disability status.").

[91] Any records post-dating Plaintiff's September 30, 2020 date last insured—*e.g.*, any records dated after October 1, 2020—would not generally be relevant to the question of whether Plaintiff was disabled before September 30, 2020. *See Jones v. Berryhill*, 2018 WL 4355210, at * 5 (W.D. Tex. Sept. 12, 2018), citing *Dominguez v. Astrue*, 286 Fed. Appx. 182, 185 (5th Cir. 2008); *Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995); *Fontenot v. U.S. Comm'r, Soc. Sec. Admin.*, 2017 WL 4084065, at *10 (W.D. La. Aug. 14, 2017) ("Evidence of medical conditions that became medically determinable after the date last insured must not be considered, and evidence establishing the degeneration of a condition after the expiration of a claimant's insured status is not relevant to the Commissioner's disability analysis."). To the extent the Fifth Circuit has held that a retrospective medical diagnosis may constitute relevant evidence of pre-expiration disability (*see Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997), Plaintiff has not shown that Dr. Ward's July 15, 2021 medical opinion relates to a pre-expiration disability. In any event, the ALJ actually considered this opinion and found it unpersuasive. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status."); *Pope v. Comm'r of Soc. Sec.*, No. 21-55, 2021 WL 6618646, at *1, n. 3 ("A claimant is eligible for disability insurance benefits only if the onset of the qualifying medical impairment began on or before the date last insured. Plaintiff's date last insured is December 31, 2016, and Plaintiff bears the burden of establishing that she suffered from a disabling impairment on or before that date." (citations omitted)). *See also Russo v. Saul*, 805 Fed. Appx. 269, 272 (5th Cir. 2020) ("Because Russo bore the burden of proving she was disabled before the expiration of her insured status, evidence describing her condition after her date last insured is not relevant.").

[92] The July 15, 2021 medical opinion provides a place for Dr. Ward to indicate whether medical findings support his limitations. That section is left blank. R. Doc. 10-9, p. 377. Additionally, in his medical opinion, Dr. Ward states that Plaintiff's diagnosis is "low back pain," which presumably forms the basis of the physical limitations he notes (*see* R. Doc. 10-9, pp. 375-377), but the ALJ found Plaintiff's degenerative disc disease to be non-severe due to "no objective findings" in the record (*see* R. Doc. 10-3, p. 41), which Plaintiff does not challenge, and most of Dr. Ward's medical records from the relevant time period are not related to complaints of back pain, but foot pain.

while on the job. Those earlier records are more relevant to Plaintiff's ability to work during the relevant time period, and they undercut his July 15, 2021 opinion that Plaintiff is wholly unable to work. Further, Dr. Ward's records from the relevant time period suggest that his comments about less hours and/or less ambulating at work pertain to Plaintiff's job around that time as a teacher's aide/paraprofessional (classified in DOT 099.327-010 as light, semiskilled with an SVP level of 6), rather than to the ALJ's determination that Plaintiff could do her past work as a receptionist (classified in DOT 237.367-010 as sedentary, semiskilled with an SVP level of 3).[93] Thus, the ALJ's entire discussion of Plaintiff's RFC, combined with his discussion of specific medical evidence and opinions in the record, shows that the ALJ properly considered Dr. Ward's opinion and determined that opinion to be unpersuasive—*i.e.*, not supportable or consistent—because Dr. Ward's July 15, 2021 medical opinion that Plaintiff is unable to work is at odds with other medical evidence, including evidence from Dr. Ward's medical records, from the relevant time period.[94]

---

[93] *See* R. Doc. 10-3 (VE testimony), at p. 88.
[94] For similar reasons, the ALJ properly considered Dr. Hall's July 8, 2021 opinion that Plaintiff cannot return to work and is able to perform "0 Hrs. [of] Sedentary Work Activity" in an 8-hour workday and found it unpersuasive. R. Doc. 10-3, p. 47. *Compare* R. Doc. 10-9, pp. 385-386 *with* R. 10-8, p. 681, & R. Doc. 10-9, pp. 147-151. *See also* R. Doc. 10-9, pp. 162-270 (Plaintiff's Records from Moreau Physical Therapy). Following her surgery, Plaintiff went to Moreau Physical Therapy from September 3, 2020 to February 4, 2021, and those records show that Plaintiff reported good and bad days with pain, which Plaintiff rated from 4/10 – 8/10, increasing and decreasing at times. *See, e.g.*, *id*. at p. 169 (9/8/20 visit Plaintiff "with reports of decreased pain following treatment session today"); p. 171 (9/11/20 visit Plaintiff "reporting pain 7-8/10 within the last 24 hours. [Plaintiff] reporting foot feels better when in the boot and usually has 0/10 pain present"); p. 176 (9/15/20 visit Plaintiff "with good tolerance toward exercises without reports of increased pain"); p. 178 (9/17/20 visit "[Plaintiff] reporting she still is having increased pain when walking in her boot…[and] uses a crutch when pain is severe"), p. 184 (9/22/20 visit Plaintiff "remains limited with functional activities including housework due to increased pain with prolonged standing and walking. [Plaintiff] reporting she was unable to clean her closed due to inability to stand for long periods of time"). The assessment section of Plaintiff's initial evaluation on 9/3/20 noted that Plaintiff "ha[d] functional limitations such as difficulty walking, standing, performing light activities around the home, and ascending/descending stairs" but noted that her "rehab potential is good." *Id*. at pp. 162-166. After being discharged on October 15, 2020, Plaintiff returned to physical therapy on November 17, 2020 but her prognosis remained "good," despite good and bad days and varied pain levels. *Id*. at pp. 195-197. *See also, e.g., id*. at p. 209 (Plaintiff "reports she's had increased pain for past 2 weeks, causing her to limp"), p. 219-221 (Plaintiff "reports reduction of pain since increasing her medication," and Plaintiff "is able to perform exercises with no complaints of pain. The [Plaintiff's] progress towards goal is good and her tolerance to treatment is good"). However, Plaintiff's physical therapy records also show that she was not always compliant with her home exercise program ("HEP"), and that she was routinely late to therapy which resulted in her being "unable to complete full [treatment] program." *See id*. at p. 223 (12/15/20 visit Plaintiff "states that she has been moderately compliant with her HEP"), p. 228 (12/18/20 visit Plaintiff "arrived to therapy 30 minutes late, therefor, unable to complete full

17

Plaintiff cites *Kneeland* for the proposition that an "ALJ legally errs in rejecting a medical opinion without explanation, and for the proposition that "cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion."[95] But Plaintiff's reliance on *Kneeland* is misplaced. First, *Kneeland* was decided on March 8, 2017, about 3 weeks before the effective date of the revisions to 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c regarding an ALJ's treatment of medical opinions and prior administrative findings. At the time *Kneeland* was decided, the opinions of a claimant's treating physician were given "significant weight."[96] That is no longer the case under the revised regulations. Second, as the Fifth Circuit noted, the *Kneeland* ALJ's "root error was failing to address—*or even mention*—[claimant's treating physician's] opinion in his decision."[97] Again, that is not the case here. The ALJ mentioned Dr. Ward's opinion and the ALJ's 5-page discussion regarding Plaintiff's RFC provides sufficient explanation for the decision to find the opinion unpersuasive.[98]

The ALJ's discussion of the opinions of two State agency physical consultants just three paragraphs before his discussion of Dr. Ward's medical opinion sheds additional light on why he found Dr. Ward's opinion unpersuasive. Both State agency physical consultants assessed Plaintiff with a "sedentary RFC with 4 hours of standing and walking with postural limitations," and they found that Plaintiff was "not disabled" because she "retain[ed] the physical and mental capacity to

---

tx program"), p. 231 (12/21/20 visit Plaintiff arrived 25 minutes late and had to leave 30 minutes after arrival), p. 233 (12/22/20 Plaintiff arrived 10 minutes late), p. 241 (12/30/20 visit Plaintiff arrived 30 minutes late), p. 243 (1/5/21 visit Plaintiff arrived 20 minutes late), p. 249 (1/12/21 visit Plaintiff "continues to arrive late…which limits progression of exercises due to time constraint"). Regardless, the physical therapist noted that Plaintiff's prognosis and rehab potential good, despite her "progress being limited due to compliance with HEP and attending PT visits appropriately." *Id*. at p. 245 (cleaned up). At bottom, Plaintiff's physical therapy records provide support for the ALJ's rejection of Dr. Ward's and Dr. Hall's opinions that Plaintiff is not able to work in any capacity.
[95] R. Doc. 13, pp. 10 & 13, citing *Kneeland*, 850 F.3d at 759 & 761.
[96] *Kneeland*, 850 F.3d at 760.
[97] *Id*. at 761.
[98] *See* R. Doc. 10-3, pp. 43-49.

18

perform her PRW (past relevant work) as a receptionist in a credit union as she describes it."[99] In reaching their conclusions, the State agency physical consultants found that Plaintiff could lift and carry 20 lbs. occasionally and 10 lbs. frequently; walk and stand 4 hours in an 8-hour work day and sit 6 hours in an 8-hour work day; that Plaintiff could occasionally climb ramps, stairs, ladders, etc.; and that Plaintiff could occasionally stoop, kneel, crouch, and crawl.[100] The ALJ found these opinions persuasive because they were "consistent with successful ankle surgery, no signs of ongoing chest pain or dizziness, no need for hand splints for carpal tunnel and conservative medication management."[101] The ALJ's discussion of these opinions and why they were persuasive provide sufficient explanation for the ALJ's determination that Dr. Ward's opinion was unpersuasive. Put differently, the ALJ found the opinions of State agency physical consultants persuasive because they were consistent with medical evidence of record. Thus, it stands to reason that he found Dr. Ward's opinion (and Dr. Hall's opinion) unpersuasive because it was inconsistent with the medical evidence of record, including the statements in Dr. Hyde's records indicating that Plaintiff was "exercising daily" and "riding her bike for 3 miles every afternoon" during the relevant time period.

The ALJ's entire RFC discussion, which includes discussion of medical evidence from the relevant time period, Dr. Ward and Dr. Hall's medical opinions from July 2021, and the medical opinions of two State agency physical consultants from September/October 2020 and February/March 2021, provides an accurate and logical bridge between the evidence and the ALJ's determination that the opinion of Dr. Ward (and that of Dr. Hall) was unpersuasive, and it allows for meaningful review by this Court of the ALJ's determination. Further, the ALJ's lengthy

---

[99] R. Doc. 10-4, pp. 109-127 (dated September 21, 2020 and October 20, 2020), and pp. 129-156 (dated February 26, 2021 and March 1, 2021).
[100] *Id*. *See also* R. Doc. 10-3, pp. 48-49.
[101] R. Doc. 10-3, pp. 47-48.

discussion of the medical evidence and medical opinions of record sufficiently explains why he found certain medical opinions persuasive and other opinions unpersuasive as required by the applicable regulations, how he formulated Plaintiff's RFC, and his determination that Plaintiff was not disabled during the relevant period because her RFC did not preclude her from performing her past relevant work as a receptionist. Accordingly, the ALJ did not err in his evaluation Dr. Ward's July 15, 2021 medical opinion, and substantial evidence supports the ALJ's formulation of Plaintiff's RFC and the ultimate determination that Plaintiff was not disabled.

## IV.   CONCLUSION

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record, considered as a whole, supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff is not disabled. Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of the Social Security Administration denying the application for disability insurance benefits filed by Plaintiff, Lorraine Young Lawrence, is **AFFIRMED** and this action is **DISMISSED**.

Signed in Baton Rouge, Louisiana, on September 25, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**